**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

BRIAN E. CONSTANTINE,

Plaintiff,

v.

NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE, *et al.*,

Defendants.

No. 1:22-cv-02678

**OPINION**

**APPEARANCES**:

Benjamin B. Brenner
BENJAMIN BRENNER LAW LLC
2020 New Road
Suite A
Linwood, NJ 08221

*On behalf of Plaintiff.*

Jeffrey S. Posta
Nicholas Klingbeil Kant
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
Hughes Justice Complex
25 Market Street
P.O. Box 117
Trenton, NJ 08625-0117

*On behalf of Defendants.*

**O'HEARN, District Judge.**

This matter comes before the Court on a Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction and for Failure to State a Claim pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) by Defendants New Jersey Department of Banking and Insurance ("Department"), New Jersey Real Estate Commission ("REC"), Marlene Caride, Eugenia K. Bonilla (improperly pled as "Eugene"), Christina Banasiak, Darlene Bandazian, Jacob Elkes, William J. Hanley, Carlos Lejnieks, Denise Illes, John Doe 1-10, and Jane Doe 1-10 (collectively "Defendants"). (ECF No. 32). The Court did not hear argument pursuant to Local Civil Rule 78.1. For the reasons that follow, Defendants' motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Brian E. Constantine ("Plaintiff") has been diagnosed with schizoaffective disorder. (Exh. 2, Am. Compl., ECF No. 4-2 at 4). In 1996, Plaintiff was found not guilty by reason of insanity on a charge of murder. (Exh. 2, Am. Compl., ECF No. 4-2 at 4). Thereafter, he was sent to a psychiatric facility. (Exh. 2, Am. Compl., ECF No. 4-2 at 4). In 2010, Plaintiff was released from the facility, recommitted in 2012, and released again six months later. (Exh. 2, Am. Compl., ECF No. 4-2 at 5). Plaintiff's criminal history also includes a simple assault conviction in 1988, possession of a weapon charge for which he entered a pre-trial intervention program in 1994, and a trespassing charge in 1994. (Exh. 3, Am. Compl., ECF No. 4-3 at 2).

On August 22, 2018, Plaintiff applied for a real estate license from the REC, which operates under the Department, (Am. Compl., ECF No. 4, ¶¶ 3, 15). *See* N.J.S.A. § 45:15-1 to -42. On October 4, 2018, the REC voted to deny Plaintiff a license based on his prior criminal convictions. (Exh. 1, Am. Compl., ECF No. 4-1 at 1). Plaintiff contested the REC's denial, and hearings for the contestation were held on September 22, 2020, and November 17, 2020, before Administrative Law Judge Kathleen J. Calemmo at the Office of Administrative Law. (Am. Compl., ECF No. 4, ¶¶ 16–18). On September 14, 2021, Judge Calemmo issued a decision reversing the REC's

decision and recommended that Plaintiff be issued a real estate license with no restrictions. (Am. Compl., ECF No. 4, ¶ 19).

Following Judge Calemmo's decision, the Commissioner of the Department had forty-five (45) days to adopt, modify, or reject the administrative law judge's decision pursuant to N.J.S.A. § 52:14B-10. (Am. Compl., ECF No. 4, ¶ 20). On March 16, 2022,[1] Defendant Bonilla, acting as President of the REC, moved for an extension of time to review Judge Calemmo's decision to May 16, 2022. (Am. Compl., ECF No. 4, ¶ 21). On April 26, 2022, Defendant Bonilla moved again for an extension of time to review Judge Calemmo's decision to June 30, 2022. (Am. Compl., ECF No. 4, ¶ 22). On May 12, 2022, the REC remanded the case back to Judge Calemmo for further findings of fact regarding Plaintiff's criminal convictions.[2] (Am. Compl., ECF No. 4, ¶ 25).

In the interim, on May 6, 2022, Plaintiff filed this action alleging: (1) violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 ("ADA"), (2) violation of 42 U.S.C. § 1983, (3) retaliation in violation of 42 U.S.C. § 12203,[3] and (4) violation of state constitutional and statutory rights. (Am. Compl., ECF No. 4)

## II.   PROCEDURAL HISTORY

On May 6, 2022, Plaintiff filed a Complaint against Defendants. (ECF No. 1). On May 13, 2022, Plaintiff filed a First Amended Complaint. (ECF No. 4).

On August 12, 2022, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 32). Defendants argue that they are immune from the causes of action

---

[1]  Defendant Bonilla did not move for an extension of time to review Judge Calemmo's decision until 183 days after Judge Calemmo issued her decision.

[2]  Neither party has provided any information as to the current status of the remand of the administrative matter.

[3]  While Plaintiff cites 42 U.S.C. § 12202 in his Amended Complaint, it appears Plaintiff is alleging a retaliation claim under 42 U.S.C. § 12203.

brought by Plaintiff under the Eleventh Amendment. (Defs. Br., ECF No. 32). On August 16, 2022, Plaintiff filed a Second Amended Complaint. (ECF No. 34). On September 7, 2022, Plaintiff filed a letter stating that the Second Amended Complaint was merely filed to correct a technical error—one of the individual Defendants had inadvertently been omitted from the caption of the Complaint—and that the filing of the Second Amended Complaint did not moot the then pending Motion to Dismiss. (ECF No. 38).  Thus, the Court considers Defendants' previously filed Motion to be one to dismiss the Second Amended Complaint.

On September 6, 2022, Plaintiff filed a brief in opposition to Defendants' Motion to Dismiss. (ECF No. 37). Plaintiff argues that Defendants are not shielded by the Eleventh Amendment or any other type of immunity.  (Pla. Br., ECF No. 37). Defendants filed a reply on September 12, 2022. (ECF No. 40).

## III.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) must be granted if the Court lacks subject matter jurisdiction. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Under Rule 12(b)(1), an attack on subject matter jurisdiction may be either a facial or a factual attack. *CNA v. U.S.*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *Id.* (internal quotation marks and citation omitted) (alteration in original).

In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d

Cir. 1977)). In a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Id.*

**B. Federal Rule of Civil Procedure 12(b)(6)**

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 547.

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Federal Rule of Civil Procedure 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

## IV. DISCUSSION

Defendants have moved to dismiss the Second Amended Complaint, arguing several types of immunity—sovereign, judicial, and qualified—preclude the claims against them. (Defs. Br., ECF No. 32-1 at 2). Defendants also maintain that there is no factual basis for Plaintiff's claims against the individual Defendants. (Defs. Br., ECF No. 32-1 at 2). Finally, Defendants argue that the claims are not ripe for judicial review as the REC has not yet issued a final decision on Plaintiff's license application. (Defs. Br., ECF No. 32-1 at 3). Plaintiff, however, maintains that Defendants are not immune and that he has established a plausible cause of action. (Pla. Br., ECF No. 38). Upon review of the Second Amended Complaint, the Court will grant Defendants' Motion to Dismiss for lack of subject matter jurisdiction.

### A. Defendants are Immune from Suit.

Plaintiff's claims against all Defendants are barred as Defendants are immune from suit under the doctrines of sovereign immunity and quasi-judicial immunity.

Under the Eleventh Amendment, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. CONST. Amend. XI. Additionally, Eleventh Amendment sovereign immunity protects a non-consenting State in federal court against violations of state law—regardless of relief sought—and federal law—except when injunctive relief is sought, which Plaintiff is not seeking here. *See*

*Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) (citing *Pennhurst State School v. Halderman*, 465 U.S. 89, 106 (1984)).

There are three exceptions to sovereign immunity under the Eleventh Amendment: (1) congressional abrogation, (2) state waiver, and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law. *MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).

Here, the State of New Jersey has not waived sovereign immunity regarding any of Plaintiff's three causes of action. *See id*. Therefore, the Court will only analyze abrogation as it applies to each of Plaintiff's claims.

Turning to abrogation of Plaintiff's ADA claims in Counts One and Three, Congress abrogated a state's right to sovereign immunity under the Eleventh Amendment to provide the power to enforce the Fourteenth Amendment. *See U.S. v. Georgia*, 546 U.S. 151, 154 (2006). But the ADA only validly abrogates state sovereign immunity "insofar as [it] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment," which is determined on a "claim-by-claim basis." *Id.* at 159 (emphasis in original). This analysis requires courts to evaluate "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II [of the ADA] but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*; *see also Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263, 273 (3d Cir. 2020).

Under Title II of the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Johnson v. Amtrak*, 390 F. App'x 109, 113 (3d Cir. 2010). Additionally, 42 U.S.C. § 12203 prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA]."

Here, both parties cite *Guttman v. Khalsa*, which addressed whether Title II validly abrogates state sovereign immunity in the context of professional licensing. 669 F.3d 1101 (10th Cir. 2012). There, the plaintiff was a physician whose medical license was revoked by the New Mexico Board of Medical Examiners based on his mental condition. *Id.* at 1113. The Court evaluated the physician's ADA discrimination claims using the above-noted three-step analysis outlined by the Supreme Court in *Georgia*. *Id.* First, the Court noted that the parties had stipulated that the plaintiff had stated a claim under Title II because the Board had suspended and revoked his medical license based on his disability. *Id.* at 1113. Second, the Court concluded that no Fourteenth Amendment violation had occurred because the Board had an important government interest of protecting the public, the deprivation was not unwarranted, the plaintiff was provided with adequate post-deprivation process, and there was a rational basis to treat the plaintiff differently. *Id.* at 1113–16. Finally, under the third step, the Court determined that Title II did not validly abrogate immunity because

> (1) the constitutional right . . . asserted was "a disabled individual's right to practice in his chosen profession," which "does not invoke heightened scrutiny," (2) "Congress did not identify a history of irrational discrimination in professional licensing when enacting Title II," and (3) "in the context of the class of cases implicating disability discrimination in professional licensing," the Title II remedy was not congruent and proportional[.]

*Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 666 (10th Cir. 2014) (quoting *Guttman*, 669 F.3d at 1118–25). The Court thus determined that Title II does not validly abrogate state sovereign immunity in the context of professional licensing. *Guttman*, 669 F.3d at 1124.

Here, Plaintiff argues he was deprived of a real estate license on the basis of his mental disability.[4] (Am. Compl., ECF No. 4, ¶ 34). Though the issue of whether Title II abrogates sovereign immunity in the context of professional licensing has yet to be addressed by the Third Circuit, the Court concurs with the Tenth Circuit's persuasive and thorough analysis of the issue in *Guttman.*

Following the three-step inquiry outlined in *Georgia*, this Court agrees with the Tenth Circuit and other federal courts which have concluded that Title II does not validly abrogate the State's sovereign immunity in the context of professional licensing. *See Schwarz v. Ga. Composite Med. Bd.*, No. 18-1142, 2020 WL 7773481, at *6 (N.D. Ga. Dec. 30, 2020), *aff'd*, No. 21-10288, 2021 WL 4519893 (11th Cir. Oct. 4, 2021) (agreeing with "the Tenth Circuit's analysis, which is thorough, well-reasoned, and persuasive, and which applies directly to Plaintiff's claim here" and concluding "as *Guttman* did, that (1) "Title II does not validly abrogate [Georgia's] sovereign

[4] As to ripeness, the ripeness doctrine requires that there be a "real, substantial controversy between the parties" involving a "dispute definite and concrete." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Though neither party has informed the Court as to the status of the remand to the OAL, Plaintiff asserts that the case is ripe as the issue in this case is not whether he has a constitutional right to a license but whether Defendants discriminated against Plaintiff based on his mental disability and thus interfered with and/or delayed Plaintiff's right to pursue his chosen occupation. Thus, there appears to be a ripe and justiciable claim for the Court to adjudicate at this time. But as the Court dismisses the Second Amended Complaint on other jurisdictional grounds, because Defendants are immune, the Court does not reach the merits of the case.

immunity in the context of professional licensing" and (2) Plaintiff's Title II claim for damages is barred by sovereign immunity); *Oliver v. Virginia Bd. of Bar Examiners*, 312 F. Supp. 3d 515, 527 (E.D. Va. 2018) (finding "that Plaintiff has failed to establish that Congress validly abrogated Virginia's sovereign immunity for purposes of applying Title II of the ADA to state-regulated professional licensing"); *Nichols v. Ala. State Bar*, No. 15-179, 2015 WL 3823929, at *5–6 (N.D. Ala. June 19, 2015), *aff'd on other grounds*, 815 F.3d 726 (2016) (finding *Guttman* "instructive" and relying on it to hold that "Congress did not abrogate the states' Eleventh Amendment immunity against ADA claims regarding regulation of attorney conduct because the abrogation provision exceeds the scope of congressional authority provided by § 5 of the Fourteenth Amendment").

Like *Guttman*, at this stage, Plaintiff has asserted a violation under Title II as he alleges that he was initially denied a real estate license because of his mental condition. However, Plaintiff has failed to allege a violation of the Fourteenth Amendment as the REC, like the medical board in *Guttman*, has the authority to oversee the licensing process for realtors in New Jersey. Thus, the REC can determine whether they believe that applicants are an imminent danger to public safety through rejecting or remanding an application for more information. Additionally, as with all administrative decisions, Plaintiff was afforded the opportunity to contest REC's decision through the OAL hearing process—which is currently pending on remand—and ultimately, appeal the final decision when it is rendered by the REC. As such, there is no violation of the Fourteenth Amendment.

Turning to the third step of the inquiry, Title II did not validly abrogate immunity on this issue. As the Tenth Circuit explained in *Guttman*, "we are presented with a right that is not fundamental, very little evidence of a widespread pattern of irrational state discrimination in

professional licensing, and a wide-reaching statute that inhibits a state's ability to safely and efficiently make professional licensing decisions." *Guttman*, 669 F.3d at 1124. Like in *Guttman*, the issue is Plaintiff's right to practice in his chosen profession—here, selling real estate. Not only is this right not fundamental but abrogation would inhibit the State's ability to make professional licensing decisions. As such, Title II did not validly abrogate immunity on this issue and Defendants are immune from the ADA claims.

Turning to Plaintiff's claim under 42 U.S.C. § 1983 in Count Two, sovereign immunity also bars recovery on such claims brought against state agencies and state officers. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68–71 (1989); *see also Green v. N.J.*, 625 F. App'x 73, 75 (3d Cir. 2015) (citing *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979)) ("Section 1983 does not abrogate states' immunity . . . and the State of New Jersey has not consented to suit in federal court."). In *Will*, the Supreme Court determined that while state officers are technically "individuals," they are acting as the state in their official capacities. *Id.* at 71. To sue an individual for deprivation of constitutional rights, the plaintiff must allege the individual's personal involvement in the restriction of a constitutional right, and that personal involvement cannot be based entirely on *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

As both the Department and REC are state agencies, they are immune from claims under 42 U.S.C. § 1983. Additionally, as Defendants Caride, Bonilla, Banasiak, Bandazian, Elkes, Hanley, Lejnieks, and Illes are all individuals working in their official capacity, Plaintiff must assert allegations of either personal direction, actual knowledge, or acquiescence with appropriate

particularity as to the Individual Defendants. However, Plaintiff has not pled specific allegations as to the Individual Defendants that denied him of his constitutional rights in their individual capacity, but rather, makes all allegations against them as an arm of the government. Therefore, all of the Individual Defendants are immune from Plaintiff's 42 U.S.C. § 1983 claim.

Additionally, quasi-judicial immunity would also apply to the REC Defendants Bonilla, Hanley, Illes, Banasiak, Bandazian, Elkes, and Lejnieks. Quasi-judicial immunity applies to public officials whose roles are "'functionally comparable' to that of a judge." *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)); *Keystone Redev. Partners, LLC v. Decker*, 631 F.3d 89, 101 (3d Cir. 2011) (concluding board members were entitled to absolute, quasi-judicial immunity). To determine whether quasi-judicial immunity applies, courts evaluate "the legal and structural components of the job function." *Keystone*, 631 F.3d at 101. Here, the REC issues decisions on real estate license applications and has the final decision-making authority over the issuance of real estate licenses in the State—a decision that can then be appealed to the Appellate Division of the New Jersey Superior Court. As such, quasi-judicial immunity would also bar Plaintiff's claims against the REC members.

As a result, this Court concludes that Defendants are shielded from liability under sovereign immunity and/or quasi-judicial immunity and thus the Court lacks subject matter jurisdiction. As such, this Court will not evaluate the merits of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6).

### B. The Court Declines to Exercise Supplemental Jurisdiction on Plaintiff's State Law Claims.

The only claim that remains arises under New Jersey state law, over which the Court would need to exercise its supplemental jurisdiction under 28 U.S.C. § 1367. For the reasons that follow,

however, the Court declines to do so and therefore dismisses the remainder of Plaintiff's Complaint without prejudice.

Federal courts are empowered to exercise supplemental jurisdiction under 28 U.S.C. § 1367 "in any civil action of which the district courts have original jurisdiction," so long "as all [the] other claims . . . are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). However, courts in their discretion may decline to exercise such jurisdiction if

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c).

In circumstances—such as the present case—when all claims over which a court has original jurisdiction have been dismissed before trial, the decision as to whether to exercise supplemental jurisdiction over the other claims remains in the court's discretion, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009), but the Supreme Court has long held that generally the remaining "state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). The *Gibbs* Court emphasized that "even though [federal courts are] bound to apply state law . . . [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.*

That being the case here, it seems most prudent to the Court to dismiss the remaining state law claims without prejudice. This has been the consistent practice of this Court in similar cases, even after the close of discovery. *See, e.g.*, *Martz v. Camden Cnty. Bd. of Chosen Freeholders*, No. 17-01336, 2019 WL 7343489, at *9–11 (D.N.J. Dec. 31, 2019) (declining to exercise supplemental jurisdiction and dismissing state law claims without prejudice after the close of discovery when the plaintiff conceded the sole federal constitutional claim); *Jones v. Virtua Health, Inc.*, No. 15-05840, 2017 WL 77411, at *2–4 (D.N.J. Jan. 9, 2017) (declining to exercise supplemental jurisdiction and remanding case to state court after the close of discovery when the plaintiff voluntarily dismissed the sole federal law claim).

Accordingly, the Court declines in its discretion to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses the remainder of his Complaint without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. (ECF No. 32). An appropriate Order accompanies this Opinion.

Christine P. O'Hearn

**CHRISTINE P. O'HEARN**
**United States District Judge**